Kevin WILLIAMS, Plaintiff(s),

v.

MID–IOWA EQUIPMENT,
INC., Defendant(s).

4:13–cv–416–RAW

United States District Court,
S.D. Iowa, Central Division.

Filed 03/27/2015

---

Mark W. Thomas, Grefe & Sidney PLC, Des Moines, IA, Robert David Epstein, Epstein Cohen Seif & Flora, Indianapolis, IN, for Plaintiff.

Thomas D. Hanson, Melissa A. Schilling, Dickinson Mackaman Tyler & Hagen PC, Des Moines, IA, Ken J. Smith, Updegraff & Smith, Newton, IA, for Defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROSS A. WALTERS, UNITED STATES MAGISTRATE JUDGE

Plaintiff Kevin Williams alleges breach of contract and fraud by defendant Mid–Iowa Equipment Inc. ("Mid–Iowa") in connection with Williams' December 2012 purchase of a John Deere 8300 tractor through an online auction website. The action was originally filed in the United States District Court for the District of Indiana. Venue was transferred to this Court on September 25, 2013. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 636(c). Before the Court is Mid–Iowa's motion for summary judgment. The motion is fully submitted following oral argument. Before reaching the merits of the case it is necessary for the Court to address Mid–Iowa's argument that the matter in controversy does not exceed the $75,000 threshold to confer diversity jurisdiction on this Court. See 28 U.S.C. § 1332(a).

### I. SUBJECT MATTER JURISDICTION

Though the Complaint seeks rescission of the transaction and alternatively damages, at hearing Mr. Williams' counsel recognized rescission is probably unavailable at this point leaving the action as now exclusively for damages.[1] It is undisputed that after taking possession of the tractor Mr. Williams paid $16,495.98 for repairs and new tires, an amount he seeks as damages for the alleged failure of the tractor to conform to its represented condition. In addition, on the fraud count the Complaint pleads punitive damages in the amount of $204,570, a figure reached by trebling the $49,900 price paid for the trac-

---

1. The abandonment of rescission moots Mr. Williams' third claim based on buyer's unilat- eral mistake which sought to void the con- tract. See Complaint [1] at 7.

tor plus the cost of repairs and other items. *See* Complaint [1] at 5–8.

 "Although the sum claimed by the plaintiff in good faith is usually dispositive, it does not control where it appears to a legal certainty the plaintiff's claim is actually for less than the jurisdictional amount." *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011). This standard is met where the "legal impossibility of recovery [is] so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Id.* (quoting *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010). *See TempWorks Software, Inc. v. Careers USA, Inc.*, Civil No. 13-2750(DSD/SER), 2014 WL 2117344, at *2 (D. Minn. May 21, 2014).

 As Mr. Williams points out, claims for punitive damages must be considered in assessing the jurisdictional amount. *See Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238,-240, 64 S.Ct. 5, 88 L.Ed. 15 (1943). The Court very much doubts that the amount of punitive damages pleaded in the Complaint would be awarded, or would survive legal challenge if awarded. However, assuming Mr. Williams' claim is limited to the $16,495.98 figure above, it is not legally certain punitive damages in addition to that figure would result in a total less than the jurisdictional amount. Mr. Williams' punitive damages claim for fraud is not as a matter of state law, or federal constitutional law, limited to three times the amount of actual damages as Mid–Iowa appears to assume. Though there is a federal due process limit to punitive damages, it is not a bright line and is dependent on case-specific factors. One of those is rea-

sonable relationship to actual damages. A ratio of between three and four to one necessary here to demonstrate the jurisdictional amount is not a legal impossibility under the case law. *See Ondrisek v. Hoffman*, 698 F.3d 1020, 1028 (8th Cir. 2012)(noting Supreme Court has suggested that a 4:1 ratio "might be close to the line of constitutional impropriety" and quoting *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003)); *see also Trickey v. Kaman Indus. Tech. Corp.*, 705 F.3d 788, 803 (8th Cir. 2013). The Court has diversity jurisdiction.

## II. FACTUAL BACKGROUND

Most of the factual background is undisputed. Where it appears there are disputes the Court has viewed the record in the light favorable to Mr. Williams. Mr. Williams' responsive motion papers are not in complete accord with L.R. 56.1.b but the Court will consider his affidavit and the few factual allegations he disputes or qualifies to the extent supported by citation to his affidavit and based on personal knowledge.

Mr. Williams is an auctioneer and owner of an Indiana limited liability corporation engaged in the business of providing auction and real estate services. Mid–Iowa is in the business of selling new and used farm and construction equipment and parts. In late 2012 Mid–Iowa listed a John Deere 8300 tractor on a third-party online auction website called "AuctionTime.com." The listing identified Mid–Iowa as the seller. The listing included the following specifications:

| | |
|---|---|
| Year | 1997 |
| Manufacturer | John Deere |
| Model | 8300 |
| Location | Illinois |
| Condition | Used |
| Quantity | 1 |
| Horsepower | 230 |
| Drive | MFWD |

(Def. App. [44–3] at 2). Under the heading "Inspection Information" the listing stated "[h]ours show 5880.7 (unverifiable)." (*Id.*)

The listing provided information about the engine including:

| | |
|---|---|
| Oil Leaks | Yes |
| Comments: | minor seepage, nothing requiring attention |

(*Id.* at 3). Among the "TERMS" the listing advised:

All equipment is advertised to the best of our knowledge and everything is sold "as is" with no guarantees. All sales are final. We encourage self-inspection before bidding. Please call ahead to ensure someone will be on-site.

(*Id.* at 2).

In his affidavit Mr. Williams states that prior to submitting his bid he spoke with Clinton Vos, Mid–Iowa's owner, about the tractor. Mr. Vos told Mr. Williams that the tractor was "100% field ready." (Williams Aff. [45–1] at 1).

On December 12, 2012 Mr. Williams placed the highest bid on the tractor of $49,900. The same day Mid–Iowa sent Mr. Williams an invoice for the purchase which included the term: "The seller makes no warranty of any kind whatsoever as to the merchantability of the products. All sales are final and are AS IS." (Def. App. [44–3] at 6). Mr. Williams paid Mid–Iowa $49,900 by wire transfer on December 13, 2012. Mr. Williams did not inspect the tractor prior to wiring payment.

In his affidavit Mr. Williams further states that after receiving the tractor he learned from John Deere records that the tractor hours were 15,132 one year prior to the purchase (apparently the hours meter rolls over after 9999 hours). (William Aff. [45–1] at 2). Mr. Williams says he also learned the tractor had 200 horse power, not 230 as advertised. (*Id.*) Finally, Mr. Williams states that the oil leak turned out to be significant requiring substantial repair. After Mr. Williams took possession of the tractor the meter on the tractor logged

4

79.3 hours of use the significance of which is disputed.

It is, as noted, undisputed that the total cost of repairs made by Mr. Williams, and for new tires, was $16,495.98. The repairs were made more than 104 days after Mid–Iowa invoiced Mr. Williams.

## III. SUMMARY JUDGMENT

A party is entitled to summary judgment if the affidavits, pleadings, and discovery materials demonstrate "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Schueller v. Goddard*, 631 F.3d 460, 462 (8th Cir. 2011)(quoting *Myers v. Lutsen Mtns. Corp.*, 587 F.3d 891, 893 (8th Cir. 2009)); *Cross v. Prairie Meadows Racetrack & Casino, Inc.*, 615 F.3d 977, 981 (8th Cir. 2010)(citing *Roeben v. BG Excelsior Ltd. Partnership*, 545 F.3d 639, 642 (8th Cir. 2008)); *see EEOC v. Trans States Airlines, Inc.*, 462 F.3d 987, 991 (8th Cir. 2006); Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if it has a real basis in the record." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A "genuine issue of fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court must view the facts in the light most favorable to the party resisting summary judgment, and give that party the benefit of all reasonable inferences which can be drawn from them, that is, "reasonable inferences that may be drawn without resorting to speculation." *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Howard v. Columbia Public Schl. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004)("unreasonable inference or sheer speculation" not accepted as fact). The resisting party must "go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact." *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir. 1999).

## IV. DISCUSSION

### A. Breach of Contract

The parties agree Iowa law applies. Mr. Williams claims Mid–Iowa breached the contract for sale of the tractor in that its condition was other than represented in the auction listing—focusing on the hours of use, horsepower, and the extent of the oil leaks—and was not "100% field ready" as represented by Mr. Vos. Mid–Iowa moves for summary judgment on the contract claim because as an "as is" sale all implied warranties were excluded by the U.C.C., Iowa Code § 554.2316(3)(a), and there was no express warranty under the contract terms.

Mr. Williams disclaims reliance on express or implied warranties, asserting his contract claim is based on "breach of the agreement between the parties to purchase this tractor." (Pl. Mem. [45] at 3). He asserts there was a contract for the sale of the tractor (which is undisputed) and that the contract was not a fully integrated written contract (which the Court takes as true for present purposes) so that parol evidence may be considered, namely the alleged "100% field ready" representation. He argues that when that representation is considered with the "as is" language the sales contract was ambiguous resulting in a fact issue about the meaning of its terms.

■ The problem with this analysis is that it assumes the "100% field ready" representation was a part of the contract. Mid–Iowa's auction listing said the tractor would be sold "as is" and specified there were no guarantees. "The term 'as is' is generally understood to mean that the buyer is buying the goods in their present condition with whatever faults they possess." 3A David Frisch, *Lawrence's Anderson on the Uniform Commercial Code* § 2–316:141 at 240 (3d ed. 2014). For the "100% field ready" representation[2] to have become a material term of the contract there would have to have been evidence of a meeting of the minds that it was so; a mutual assent to the representation as a contract term. *See Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010)(valid contract requires expression of mutual assent to the terms of the contract, citing *Schaer v. Webster City*, 644 N.W.2d 327, 338 (Iowa 2002)).

■ "Mutual assent is ordinarily manifested through offer and acceptance . . . ." *Rucker v. Taylor*, 828 N.W.2d 595, 602 (Iowa 2013). The offer and acceptance here do not evince mutual assent to "100% field ready" as a contract term, either expressly or by implication. Because such a term would be inconsistent with the advertised "as is" nature of the transaction, Mr. Williams would have had to communicate to Mid–Iowa that his offer to buy the tractor (the bid) was subject to agreement that the tractor was "100% field ready." He did not do so. As far as the record indicates Mr. Williams submitted a bid without proposing any terms other than those advertised in the auction listing. The bid was accepted by Mid–Iowa. In its invoice Mid–Iowa conspicuously again stated the "terms" of the agreement were that "[a]ll sales are final and are AS IS." Nothing was said about "100% field ready." Mr. Williams paid the invoice thus agreeing to the terms stated.

The Court notes that Mr. Williams did not respond to Mid–Iowa's requests for admission and as a consequence is deemed to have admitted the matter stated in request number 9 that he "purchased the 8300 John Deere tractor ... per Mid–Iowa's terms of sale." (Def. App. [44–3] at 18, 25). *See* Fed. R. Civ. P. 36(a)(3).[3]

■ Mr. Williams also argues that "[a]n ordinarily diligent seller" would not in good faith have stated that the tractor had 5880.7 hours of use (or that the hours were "unverifiable"), 230 horsepower,[4] or minor oil seepage which did not require attention. Obligations of good faith, diligence, reasonableness and care where imposed by the U.C.C. may not be disclaimed by agreement. Iowa Code § 554.1302(2). This mirrors the general principle of contract law that an "implied duty good faith and fair dealing ... inheres in all contracts and cannot be disclaimed . . . ." *Alta Vista Properties LLC v. Mauer Vision Center, PC*, 855 N.W.2d 722, 730 (Iowa 2014). The principle is found in *Restatement (Second) of Contracts* § 205 ("*Restatement*")("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforce-

---

2. For purposes of this ruling the Court assumes the representation was sufficiently definite to have been a contract term.

3. The Court also notes that in his affidavit Mr. Williams does not state Mid–Iowa agreed that the "100% field ready" representation was part of their contract. He simply says the statement was made and what he took it to mean. That is insufficient to demonstrate mutual assent to the representation as a contract term. (*See* Williams Aff. [45–1] at 1).

4. There is evidence in the record that the power takeoff (PTO) on the tractor on testing showed that it was 230 horsepower. (*See* Def. App. [44–3] at 51).

ment") and is predicated on an "implied covenant that neither party will do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Alta Vista*, 855 N.W.2d at 730 (quoting *Am. Tower, L.P. v. Local TV Iowa, L.L.C.*, 809 N.W.2d 546, 550 (Iowa App. 2011) quoting in turn 13 Richard A. Lord, *Williston on Contracts* § 38.15, at 437 (4th ed. 2000)).

■ As the *Restatement* states, the principle of good faith and fair dealing has to do with the performance of a contract, not its formation. Restatement § 205 (c). It "does not give rise to new substantive terms that do not otherwise exist in the contract." *Bagelmann v. First Nat'l Bank*, 823 N.W.2d 18, 34 (Iowa 2012). It follows the duty of good faith and fair dealing did not convert the auction listing's description of the condition of the tractor or Mr. Vos's "100% field ready" representation into enforceable contract terms.

Mid–Iowa is entitled to summary judgment on the contract claim.

B. Fraud

■ Misrepresentation in the formation of a contract may be actionable for fraud. In Iowa fraud requires a heightened burden of proof—the preponderance of the clear, satisfactory and convincing evidence—to satisfy the following elements: "(1) representation; (2) falsity; (3) materiality; (4) scienter; (5) intent to deceive; (6) reliance; and (7) resulting injury and damage." *Cornell v. Wunschel*, 408 N.W.2d 369, 374 (Iowa 1976); *see Limited Flying Club, Inc. v. Wood*, 632 F.2d 51, 54 (8th Cir. 1980)(applying Iowa law); *BVS, Inc. v. CDW Direct, LLC*, 88 F.Supp.3d 948, 963–64 (N.D. Iowa 2015). The critical element for present purposes is intent to deceive. It is well established that the requisite intent may be shown by evidence the defendant wanted to deceive the plaintiff

or believed the plaintiff would be deceived, had information from which a reasonable person would conclude the plaintiff would be deceived, or made the representations without concern for the truth. *See* Iowa Civil Jury Inst. 810.6. As noted before, Mr. Williams did not respond to Mid–Iowa's requests for admission. He therefore is also deemed to have admitted the matter set out in request number 5: "Plaintiff has not alleged that the Defendant intended to deceive Plaintiff with respect to the sale of the 8300 John Deere tractor." (Def. App. [44–3] at 23). The admission that there is no allegation of an essential element of a claim is fatal to the claim.

■ In responding to the motion on the issue of fraud, Mr. Williams asserts that with diligence and ordinary care Mid–Iowa could have verified the number of hours logged, would have learned the true horsepower of the tractor, and would have known the oil leak was not minor and required repair. (Pl. Mem. [45] at 7). That in its auction listing Mid–Iowa gave inaccurate information about the condition of the tractor and could have obtained accurate information about the particulars in question is not alone sufficient to create a reasonable inference of fraud beyond speculation.

## V. RULING AND ORDER

Defendant Mid–Iowa's motion for summary judgment [44] is **granted**. The Clerk shall enter judgment dismissing the Complaint.

IT IS SO ORDERED.