# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-2761

———————

Carolyn E. Schubert, Personal     \*
Representative of the Estate of     \*
Thomas R. Schubert, deceased,     \*
    \*
       Appellee,     \*
    \*    Appeal from the United States
   v.     \*    District Court for the Western
    \*    District of Missouri.
Auto Owners Insurance Company,     \*
    \*
       Appellant.     \*

———————

Submitted: April 14, 2011
Filed: August 12, 2011

———————

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

———————

BYE, Circuit Judge.

Auto Owners Insurance Company ("Auto Owners") appeals the order granting summary judgment in favor of Carolyn Schubert and awarding her $124,500, the face value of the insurance policy sold to her by Auto Owners. Because Schubert owned a one-half interest in the dwelling covered by the policy, which was completely destroyed by fire, Auto Owners offered to pay her half of the policy value. Auto Owners cited a provision within the policy which limited recovery to "[no] more than the insurable interest the insured has in the covered property at the time of loss." The

district court[1] declared this provision void as contrary to the public policy expressed in the Missouri valued policy statute, see Mo. Rev. Stat. § 379.140 (2000), and alternatively found its language ambiguous so as to allow Schubert to recover the face value of the insurance policy. Because we agree with the district court's conclusions as to both points, we affirm. We are also convinced, after initially questioning our jurisdiction over the matter, that the case satisfies the $75,000 amount-in-controversy requirement and jurisdiction is proper.

## I. Underlying Dispute

The house covered by the Auto Owners policy at issue was located at 1100 Eastwood in Harrisonville, Missouri, and originally belonged to the first wife of Carolyn Schubert's late husband, Thomas Schubert. Thomas purchased the policy in 2004, after his first wife had died, and maintained it until his own death in 2006. Because Thomas died intestate, Carolyn Schubert, who had married him the previous year, was uncertain as to whether she would inherit the house. She told as much to an Auto Owners agent during a phone conversation in October 2006, when she notified the company of Thomas's death and transferred the policy into her own name. If she turned out not to inherit the property, Schubert predicted, she would stop paying the premiums. Since that conversation, she never updated Auto Owners on the status of the ownership dispute, but continued to make regular premium payments on the policy and renewed the policy at least twice after Thomas's death.

At the time of Thomas's death, the house was occupied by his stepdaughter from his first marriage, Deborah Lee Weiss. During the probate proceedings to determine the heirship of the house, Schubert stipulated with Weiss as to each owning fifty percent (50%) of the property. But the rapprochement was short-lived. Three

---

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

months after entering into the stipulation, in March 2008, Weiss intentionally set the insured property on fire, which resulted in its complete destruction.

When Schubert made a claim on the policy shortly thereafter, Auto Owners refused to pay the policy face value of $124,500. It justified the refusal by reference to the clause within the policy which limited recovery to the insured's "insurable interest" in the property:

> PROPERTY PROTECTION CONDITIONS
> INSURABLE INTEREST
> Subject to the applicable limit of insurance, we will not pay more than the insurable interest the insured has in the covered property at the time of loss.

JA at 121.

Since the company determined Schubert's insurable interest to be fifty percent of the value of the property, it sent her a check for half of the policy amount, or $62,250. Through her lawyer, Schubert rejected the tender and demanded the payment of the face value of the policy within seven days. Although she did not cash the check, she did not return it either, holding on to it purportedly until she got paid in full. With no payment forthcoming, Schubert filed the present lawsuit asserting a breach of contract and seeking damages for vexatious refusal to pay pursuant to Mo. Rev. Stat. § 375.296 in a Missouri state court. After Auto Owners removed the case to federal court, the district court granted summary judgment in favor of Schubert on her breach of contract claim and in favor of Auto Owners on Schubert's vexatious refusal to pay claim. In the district court's view, the contractual limitation on recovery based on the degree of the insured's insurable interest in the property was void as contrary to the Missouri valued policy statute and, even assuming the limitation was valid, the policy was ambiguous in its definition of "insurable interest" and could not be used to deny Schubert full recovery. Auto Owners appeals.

## II. Subject-Matter Jurisdiction

Although neither party challenges the court's jurisdiction to hear the case, we have an independent obligation to evaluate it. Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006). Acting on this obligation, the court ordered supplemental briefing on whether the case meets the $75,000 amount-in-controversy threshold the diversity jurisdiction statute requires. 28 U.S.C. § 1332(a). As an initial matter, the court was concerned that, with Auto Owners having conceded Schubert's entitlement to the first $62,250 of the policy, only the other half of the policy, or $62,250, remains in controversy in Schubert's breach-of-contract claim. The court's second concern was whether Schubert's vexatious refusal to pay claim was sufficient to bridge the value gap under this court's holding in Missouri ex rel. Pemiscot County v. Western Surety Co., 51 F.3d 170 (8th Cir. 1995). We will consider each of these concerns in turn.

### A.

We first address the amount in controversy in Schubert's breach-of-contract claim. In this circuit, the amount in controversy is measured by "the value to the plaintiff of the right sought to be enforced." Advance Am. Servicing of Ark. v. McGinnis, 526 F.3d 1170, 1173 (8th Cir. 2008). Generally, the defendant's pre-suit concessions as to all or some portion of the plaintiff's claim do not diminish the value of that claim for the purposes of the diversity jurisdiction analysis as long as, for one reason or another, the claim remains unpaid. In re Reisenberg, 208 U.S. 90, 107-08 (1908). "Jurisdiction does not depend upon the fact that the defendant denies the existence of the claim made, or its amount or validity," id. at 108, or else the court's ability to enter default or consent judgments would be seriously compromised.

Yet, the insurer's pre-suit concession of liability is not entirely inconsequential. For example, in a declaratory judgment action brought by an insurance company, the Sixth Circuit found the claim to be for $75,000 even, falling a penny short of the

statutory threshold, where the insurer conceded the policy required a payment of $25,000 but disagreed with the insured who insisted he was entitled to $100,000 in coverage. Freeland v. Liberty Mut. Fire Ins. Co., 632 F.3d 250, 252-55 (6th Cir. 2011). Similarly, where the insurer entered into a $50,000 settlement agreement with the insured prior to the filing of the case, but the insured sued insisting on $100,000 in coverage, the Third Circuit concluded the insurer's action seeking a declaration that the payment satisfied its obligations in full left only $50,000 in controversy. State Farm Mut. Auto. Ins. Co. v. Powell, 87 F.3d 93, 97 (3d Cir. 1996). Reasoning along the same lines, another court has held, where the insurer already made partial payments on the claim, there was no diversity jurisdiction over the insured's action seeking to recover the remaining payments under the policy because these payments fell below the jurisdictional minimum. Boe v. State Farm Fire & Cas. Ins. Co., No. 09-780, 2009 WL 1707122, at *3 (E.D. La. June 16, 2009).

Returning to the facts of this case, Auto Owners not only conceded liability as to the first $62,250 of the policy amount, but also sent Schubert a check for that amount.[2] These events had occurred before the commencement of the action, so the

_____

[2]In truth, Auto Owners' check was not entirely without any strings attached. On its face, it was inscribed, "In payment of 50% of insurable interest," and in a letter accompanying the check, Auto Owners "offer[ed] the 50% of the policy limit, $62,250.00 for the above fire per the above policy language." Schubert was further requested to fill out a different Proof of Loss form, where she was presumably expected to put $62,250 as the new "amount claimed." Although these restrictions might not amount to accord and satisfaction, which usually requires the express conditioning of the payment on full satisfaction of the claim, see Henderson v. Eagle Express Co., 483 S.W.2d 767, 768 (Mo. Ct. App. 1972), Schubert's counsel was justifiably concerned about the morass of factual issues which might arise upon his client's acceptance of the payment. Estle v. Country Mut. Ins. Co., 970 F.2d 476, 479 (8th Cir. 1992) (determining whether accord and satisfaction has been reached under Missouri law is a factual inquiry focusing on the parties' intent). One could argue in these circumstances that the proposed payment was not a meaningful concession on

-5-

rule that the settlement *during* the pendency of the suit cannot reduce the amount in controversy does not apply. McCollum v. State Farm Ins. Co., 376 F. App'x 217, 220 (3d Cir. 2010). The case therefore seems to fit squarely within the factual pattern considered by the Sixth Circuit in Freeland, where the live dispute does not involve the entire value of the policy but only a part of it as to which the insurer disputed liability. Because, applying Freeland, only half of the face value remained in controversy, Auto Owners must rely on the vexatious refusal to pay count to reach the $75,000 threshold necessary to support jurisdiction.

B.

In assessing the amount in controversy on the vexatious refusal to pay count, we start with the basics. As a party invoking the court's jurisdiction, Auto Owners has an obligation to show, by a preponderance of the evidence, facts supporting jurisdiction. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936). In this case, Auto Owners has to show the amount in controversy in both counts exceeds the sum or value of $75,000, exclusive of interest and costs. See 28 U.S.C. § 1332(a). Although the sum claimed by the plaintiff in good faith is usually dispositive, it does not control where it appears to a legal certainty the plaintiff's claim is actually for less than the jurisdictional amount. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938); Zunamon v. Brown, 418 F.2d 883, 886 (8th Cir. 1969). The legal certainty standard is met where the "legal impossibility of recovery [is] so certain as virtually to negative the plaintiff's good faith in asserting the claim." JTH, Inc. v. Frashier, 624 F.3d 635, 638 (4th Cir. 2010) (internal quotation marks and citation omitted); see also Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353 (1961) ("The general federal rule has long been to decide what the amount in controversy is

Auto Owners' part and should not be relied upon to reduce the amount in controversy. Because neither party asserted this theory in briefs or during oral argument, however, we will leave its resolution for a future occasion.

from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith.'"). In other words, whether the plaintiff makes his allegations in good faith is "but a linguistic variance" of the legal-certainty test. Zunamon, 418 F.2d at 886 n.3.

It is axiomatic the court's jurisdiction is measured either at the time the action is commenced or, more pertinent to this case, at the time of removal. McLain v. Andersen Corp., 567 F.3d 956, 965 (8th Cir. 2009); Kansas Pub. Employees Ret. Sys. v. Reimer & Kroger Assocs., Inc., 77 F.3d 1063, 1067-68 (8th Cir. 1996). "The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction." St. Paul Mercury, 303 U.S. at 289. Neither the existence of a valid defense nor subsequent events reducing the amount in controversy divest the court of jurisdiction. See Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir. 1982) (holding existence of a valid defense limiting plaintiff's recovery to $1,000 did not divest the court of jurisdiction to hear the case); Klepper v. First Am. Bank, 916 F.2d 337, 340 (6th Cir. 1990) (holding dismissal of the plaintiff's key claims on summary judgment did not affect the amount in controversy); Griffin v. Red Run Lodge, Inc., 610 F.2d 1198, 1204 (4th Cir. 1979) (determination that one of the aggregated claims, which was necessary to reach the jurisdictional threshold, was without merit did not destroy jurisdiction).

This is not to say subsequent events are entirely irrelevant. "Subsequent events may . . . be relevant to prove the existence or nonexistence of diversity jurisdiction at the time of filing," Scottsdale Ins. Co. v. Universal Crop Prot. Alliance, Inc., 620 F.3d 926, 931 (8th Cir. 2010), and a "distinction must be made . . . between subsequent events that change the amount in controversy and subsequent revelations that, in fact, the required amount was or was not in controversy at the commencement of the action." Powell, 87 F.3d at 97 (internal quotation marks, citation and emphasis omitted). In considering the types of materials which can contain such "revelations,"

courts have mentioned the "face of the pleadings," <u>St. Paul Mercury</u>, 303 U.S. at 289, and the "proof adduced to the court before trial," <u>Kopp v. Kopp</u>, 280 F.3d 883, 885 (8th Cir. 2002).

There is admittedly certain tension between the principle that post-removal events do not affect jurisdiction and that pre-trial proofs can be used to assess the amount in controversy as it existed at the time of removal. It is resolved, however, by deferring to the plaintiff's estimate with respect to the amount in controversy whenever the impossibility of recovery is not apparent from the face of the pleadings but emerges from adjudication of the merits. <u>See</u> <u>McDonald v. Patton</u>, 240 F.2d 424, 426 (4th Cir. 1957). Further, resort to materials developed in discovery is allowed merely to "amplify the meaning of the complaint allegations." <u>Zacharia</u>, 684 F.2d at 202.

In this case, Schubert's complaint requests damages for Auto Owners' alleged vexatious refusal to pay pursuant to Mo. Rev. Stat. § 375.420. To recover damages for vexatious refusal to pay, Schubert had to establish that: (1) she had an insurance policy with Auto Owners; (2) Auto Owners refused to pay; and (3) its refusal was "without reasonable cause or excuse." <u>Dhyne v. State Farm Fire & Cas. Co.</u>, 188 S.W.3d 454, 457 (Mo. 2006). "If there is an open question of fact or law determinative of coverage, the insurer may insist upon a judicial determination of that question without incurring this statutory penalty." <u>Pemiscot County</u>, 51 F.3d at 174. But even if a litigable issue exists, refusal to pay may still be found to be vexatious where "there is evidence the insurer's attitude was vexatious and recalcitrant." <u>DeWitt v. Am. Family Mut. Ins. Co.</u>, 667 S.W.2d 700, 710 (Mo. 1984) (en banc).

This standard puts squarely at issue the merits of Schubert's argument that the Missouri valued policy statute, Mo. Rev. Stat. § 379.140, prohibits the kinds of

restrictions on recovery that Auto Owners invoked in reducing her payout.[3]  As we explain later in the opinion, Schubert reasonably argued that the highest court of the state had settled this issue favorably to Schubert long before Auto Owners' refusal to pay.  Although we do not necessarily suggest the district court erred in dismissing Schubert's vexatious refusal to pay claim (Schubert did not appeal dismissal of that claim), we find her allegations in connection with that claim to have been made in good faith in the complaint, as required to sustain jurisdiction.  The district court's subsequent finding of "complex issues of law" and grant of summary judgment in favor of Auto Owners did not "negative [Schubert's] good faith in asserting the claim."  JTH Tax, Inc., 624 F.3d at 638; Zunamon, 418 F.2d at 886 n.3; see also JAM Inc. v. Nautilus Ins. Co., 128 S.W.3d 879, 897-99 (Mo. Ct. App. 2004) (finding a submissible claim for damages for vexatious refusal to pay where the insurer refused to pay on account of lack of insurable interest in the property, contrary to the position of the Missouri Supreme Court and some appellate cases).

In so concluding, we are mindful of this court's 1995 decision in Pemiscot County, 51 F.3d at 175, and 1973 decision in Crenshaw v. Great Central Insurance Co., 482 F.2d 1255 (8th Cir. 1973).  In both cases, the court seemingly relied on the summary judgment dismissal of a vexatious refusal to pay count to justify dismissal of the case for want of jurisdiction.  A review of these cases' facts is necessary in order to understand why these precedents are not controlling here.

In Pemiscot County, a county in Missouri sued the insurance company of one of its officials, the County Sheriff, to recover the $50,000 surety bond posted by the sheriff to guarantee the faithful execution of his duties.  The county alleged the sheriff

---

[3]As the district court pointed out, Schubert does not allege the insurer's recalcitrance or delay in handling the claim as the basis for her vexatious refusal to pay claim.  On appeal, Schubert does not contest that portion of the district court's reasoning.

improperly retained some of the fees he received from the United States Marshals Service for housing and transporting federal prisoners to and from the county jail. Because the diversity statute at the time set a $50,000 threshold, the county's vexatious refusal to pay claim, brought under the same Missouri statute, was critical to the court's jurisdiction. In defending against that claim, the surety company argued that, its liability being only derivative of its principal's, it was entitled to rely on his reasonable defense, even if unsuccessful in the end. This court agreed, finding the determination of the sheriff's liability presented a host of complex issues bearing on the legality of his underlying actions; the court also found the sheriff's initial refusal to pay was not indefensible so as to make the surety's refusal to pay vexatious. Id. at 175. *On that record*, the court equated the "district court's well-justified finding of an open issue of law" with the showing, to a legal certainty, that the surety "could never be liable for a statutory vexatious refusal." Id.

The factual setup in Crenshaw is rather similar. After the insurer refused coverage under the uninsured motorist policy on the grounds recovery was barred by the Missouri statute of limitations for wrongful death actions, the plaintiffs, parents of an individual killed by an uninsured driver, sued. They maintained that the longer, breach-of-contract statute of limitations governed and their cause of action was therefore still viable. The law required plaintiffs to establish their right to recover from the uninsured driver as a prerequisite to recovering under the policy. Because the court found an "open question of law" as to which statute of limitations – contract or wrongful death – applies to the case, it concluded "the refusal to pay in the instant case could not, to a legal certainty, be considered vexatious." Id. at 1258.

At some level, these decisions are inconsistent with the venerable principles of diversity jurisdiction outlined above. While damages for vexatious refusal to pay are indeed inappropriate where the insurer has reasonable cause to believe it has a meritorious defense to the plaintiff's claims, Watters v. Travel Guard Int'l, 136

S.W.3d 100, 109 (Mo. Ct. App. 2004), a well-accepted jurisdictional maxim dictates that a meritorious defense does not undermine jurisdiction. See St. Paul Mercury, 303 U.S. at 289. Moreover, just how meritorious the insurer's defense is might not become clear until dispositive ruling, long after the jurisdictionally relevant time of removal. The determination of the insurer's bad faith is closely intertwined with the merits of the underlying dispute related to coverage and is one of the post-removal events which, it is likewise well established, does not diminish the amount in controversy. OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 349-50 (8th Cir. 2007) (estimating jurisdiction by the amount properly pleaded and not by the end result); see also Kovacs v. Chesley, 406 F.3d 393, 396 (6th Cir. 2006) ("The test for whether the jurisdictional amount has been met considers whether the plaintiff can succeed on the merits in only a very superficial way."). If the courts relied on summary judgment rulings to undermine jurisdiction, "the orderly progress of litigation would be disrupted, and doubt and ambiguity would surround the jurisdictional base of most diversity litigation from complaint to final judgment. Issues going to a federal court's power to decide would be hopelessly confused with the merits themselves." Zacharia, 684 F.2d at 202. In close cases alleging borderline amounts in controversy, a plaintiff losing a claim for vexatious refusal to pay or, by analogy, punitive damages would lose a right to appeal the district court's ruling. Conversely, a defendant could never win in a diversity case, because success would lead only to jurisdictional dismissals. See Johnson v. Wattenbarger, 361 F.3d 991, 993-94 (7th Cir. 2004). Needless to say, such interpretation of the amount in controversy concept is untenable.

On another level, however, Pemiscot County and Crenshaw are reconcilable with the commonly accepted standards of jurisdiction and distinguishable from the case at hand. The decision in Pemiscot County, for example, hinged on several legal and factual disputes regarding the alleged wrongfulness of the sheriff's actions and the limited avenue for finding the surety company liable was for the sheriff to lack

-11-

defenses altogether. Because the sheriff put forward several defenses and even secured the backing of an independent state official (State Auditor), the county's vexatious refusal to pay claim had a frivolous quality from the start. By contrast, Auto Owners' liability to Schubert was not derivative of anyone else's, and the merits of the insurance claim required the resolution of a single issue which had been squarely addressed by the Missouri Supreme Court. Looking at the complaint and other materials "amplify[ing] the meaning of the complaint allegations," Zacharia, 684 F.2d at 202, the district court could not view Schubert's allegations as having been made in bad faith to a legal certainty. It was only with the benefit of the summary judgment ruling, with its detailed discussion of the underlying coverage issues, that the vexatious refusal to pay started to look meritless, still falling short of being outright frivolous.

Issues of the underlying coverage in Crenshaw appear even more complex than in Pemiscot County. In order to be entitled to the uninsured motorist coverage, the Crenshaw plaintiffs had to establish their right to recover from the uninsured motorists themselves. 482 F.2d at 1257. In having to prove what is essentially a "case within a case," the issue of the applicable statute of limitations is just one of the many problems the plaintiffs are sure to face. In the spectrum between cases with the least complex issues of coverage, in which vexatious refusal to pay damages are most likely, and cases involving the most complex issues of coverage, in which damages for vexatious refusal to pay are least likely, Crenshaw falls closer to the latter boundary. In Schubert's case, by contrast, the issues surrounding coverage are significantly more straightforward, and damages more likely. The whole point of the vexatious refusal to pay damages is "to make the contracting party whole in a practical sense and to provide an incentive for insurance companies to pay legitimate claims without litigation." Dhyne, 188 S.W.3d at 457 (internal quotation marks and citation omitted). Where Schubert was forced into litigation by her insurer's denial of a

-12-

legitimate claim, Schubert's application for vexatious refusal to pay damages was not frivolous. In that important respect, Schubert's case is different from Crenshaw.

Because we find Schubert's case does not fall within the St. Paul Mercury category of cases in which jurisdictional prerequisites are, to a legal certainty, not satisfied, we credit the good-faith allegations of her complaint and conclude jurisdiction is proper.

III. Breach of Contract Claim

Now on to the merits of Schubert's substantive argument that a Missouri valued policy statute voids the policy limitation on Schubert's recovery to her "insurable interest" in the property. Under the valued policy statute, in effect in Missouri since 1879, the property valuation listed on the policy is conclusive, absent fraud, misrepresentation, or collusion. Mo. Rev. Stat. § 379.140; see DeWitt, 667 S.W.2d at 708. The statute in question reads:

> In all suits brought upon policies of insurance against loss or damage by fire hereafter issued or renewed, the defendant shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy the full amount insured therein on said property; and *in case of total loss of the property insured, the measure of damage shall be the amount for which the same was insured*, less whatever depreciation in value, below the amount for which the property is insured, the property may have sustained between the time of issuing the policy and the time of the loss, and the burden of proving such depreciation shall be upon the defendant; and in case of partial loss, the measure of damage shall be that portion of the value of the whole property insured, ascertained in the manner prescribed in this chapter, which the part injured or destroyed bears to the whole property insured.

Mo. Rev. Stat. § 379.140 (emphasis added).

Thus, unlike open policies, which leave the payout amount uncertain, valued policies fix the risks by agreeing on the value of the property at the time a policy is issued, similar to a liquidated damages provision in other contracts. Polytech, Inc. v. Affiliated FM Ins. Co., 21 F.3d 271, 273 (8th Cir. 1994). The purpose of these statutes is to prevent overinsurance – the practice of insurance companies "taking reckless risks in order to obtain large premiums" – and to "encourage insurers to investigate the value of the property when coverage is purchased." Cmty. Title Co. v. Safeco Ins. Co. of Am., 795 S.W.2d 453, 463 (Mo. Ct. App. 1990) (interpreting Mo. Rev. Stat. § 379.140).

But before the insured can gain the benefit of the valued policy statute, he must have "an insurable interest in property both at the time of making the contract and at the time of loss" – a requirement intended to prevent wagering. DeWitt, 667 S.W.2d at 704. Satisfying this requirement is, however, easy because "insurable interest" is defined broadly. The test is as follows:

> In general, a person has an insurable interest in the subject matter insured where he has such a relation or concern in such subject matter that he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by happening of the event insured against.

G.M. Battery & Boat Co. v. L.K.N. Corp., 747 S.W.2d 624, 626 (Mo. 1988).

"Under Missouri law, the lack of title is immaterial to determining whether a party has an insurable interest." Beckon, Inc. v. AMCO Ins. Co., 616 F.3d 812, 818 (8th Cir. 2010). Insurable interest may be "entirely disconnected from any title, lien, or possession." Am. Cent. Ins. Co. v. Kirby, 294 S.W.2d 556, 561 (Mo. Ct. App. 1956). For example, insurable interest was established by a lessee with an option to buy the leased property who had a contractual obligation to insure the property, G.M.

-14-

Battery & Boat Co., 747 S.W.2d at 627-28; a mortgagor who remained liable on the indebtedness on the property even though she held a legal title to the property in trust for someone else, see DeWitt, 667 S.W.2d at 706; and simply a shareholder and an officer of the corporation that owned the property who was responsible for procuring insurance on the property, see JAM Inc., 128 S.W.3d at 887-89.

Is the insured with only a partial ownership interest in the covered property entitled to payment of the face value of the policy in the event of total loss? States with valued policy statutes resolved this question differently. See Michael J. Skeary, Valued Policy Laws: A Comparative Analysis, 44 Tort Trial & Ins. Practice L.J. 1067, 1091-94 (2009) (describing the three general approaches to the issue). The Missouri courts, like courts of Arkansas, Minnesota, and Mississippi, have allowed the insureds to recover the full amount of the policy. Id. at 1093 & n.178 (dubbing the Missouri approach as the "Minnesota Rule" and collecting the relevant cases from the four jurisdictions following that rule).

The seminal case representing the Missouri courts' position is DeWitt v. American Family Mutual Insurance Co., 667 S.W.2d at 707. The insured in DeWitt did not have a valid title to the property but remained personally liable on three mortgages taken against it. When the insurer attempted to limit its liability under the policy to the amount of the insured's outstanding mortgages, the court rejected "defendant's argument that the valued policy statute does not apply where the interest of the insured is a limited or qualified one not predicated upon full ownership." 667 S.W.2d at 707. "A person with ownership interest less than the whole may recover the whole policy limits under the valued policy statute," concluded the court, noting the absence of authority "'for the novel proposition that the amount of the recovery is limited to the balance of the insured's interest.'" Id. at 707 (quoting Miller v. Nat'l Union Fire Ins. Co., 386 S.W.2d 668, 673 (Mo. Ct. App. 1964)). The court was of the view that, having undertaken no investigation into the insured's ownership prior to

contracting and having accepted the premiums, the insurer could not later complain the insured's interest was overvalued.  Id. at 708; see also G.M. Battery & Boat Co., 747 S.W.2d at 627-28 (once the insured is found to have an insurable interest in the property, it is entitled to recover the full face amount of the policy for the total loss because the Missouri valued policy statute "places the risk of overinsurance on the insurer rather than on the insured").

Nevertheless, the Missouri Supreme Court left the door open for insurance companies to avoid the burden of potential overinsurance "by strictly defining the interest covered by its policy, or by obtaining representations or warranties about the state of the title, if it deems this information important."  G.M. Battery & Boat Co., 747 S.W.2d at 628.  Another situation in which the insurer cannot be saddled with the risk of overinsurance is where the insurer has materially altered his ownership interest in the property since entering into the contract.  Lumbermens Mut. Ins. Co. v. Edmister, 412 F.2d 351, 355 (8th Cir. 1969) (applying Missouri law).  "What [the insurer] cannot do is to issue a policy, collect the premiums, and then argue that the value of the insured's insurable interest in the property is less than the coverage it underwrites."  G.M. Battery & Boat Co., 747 S.W.2d at 628.

A.

Auto Owners does not dispute that Schubert has an insurable interest in the house at 1100 Eastwood.  Nor does it argue Schubert's interest in the house changed materially throughout her relationship with Auto Owners. Rather, Auto Owners relies on the Missouri Court of Appeals decision in Gorman v. Farm Bureau Town & Country Insurance Co. of Missouri, 977 S.W.2d 519 (Mo. Ct. App. 1998), to argue the policy provision limiting recovery to no more than Schubert's "insurable interest" in the property caps recovery at fifty percent of the policy value.  This argument is unavailing for a host of reasons.

*First*, Gorman does not stand for the proposition Auto Owners cites it for. In Gorman, the court considered a policy which limited recovery to the "smaller of . . . the insurable interest the insured has in the property [or, among other things,] the amount of coverage shown on the Information Page." Id. at 523. At the time the policy was purchased, the covered property was owned by a business partnership consisting of the two insureds and a third partner. By the time the loss occurred, however, the insureds had sold their entire interest to the third partner and retained only a $7,400 mortgage against it. During litigation, the insureds argued the clause limiting their recovery to the "insurable interest" was contrary to the valued policy statute and therefore void.

The Missouri Court of Appeals rejected this argument, finding "the valued policy statute would not apply where, as here, without notice to the insurer, the insureds materially altered their insurable interest that existed at the time the policy was purchased." Id. at 525. The material change in the insurable interest of the insured was therefore a pivotal point in the court's decision. The Gorman court believed it was not bound by the supreme court's opinion in DeWitt because that opinion "did not answer our question as to whether the valued policy statute applies where the insured's insurable interest is materially altered from the time of making the insurance contract and the time of loss." Gorman, 977 S.W.2d at 526. This is, of course, not the situation presented in this case, because the insurer never relied upon the change in Schubert's ownership of the house in limiting recovery.

*Second*, as a subsequent court of appeals panel recognized, Gorman, an opinion of the intermediary appellate court of the state, is in tension with the opinions of the supreme court of the state in DeWitt and G.M. Battery:

> [W]hile Gorman implies that the insurer can use a restrictive definition of the insured's interest to limit coverage after a policy is issued, G.M. Battery appears to hold that the insurer should use a

-17-

restrictive definition of the insured's interest to underwrite coverage but, once the policy is issued, the insurer cannot dispute the value of the insured's insurable interest.

JAM Inc., 128 S.W.3d at 892-93.

In a diversity case such as this, "we must apply Missouri law as declared by the State's highest court, the Supreme Court of Missouri." Council Tower Ass'n v. Axis Specialty Ins. Co., 630 F.3d 725, 728 (8th Cir. 2011) (citing Erie R.R. Co. v. Tomkins, 304 U.S. 64, 78 (1938)). Thus, the holdings in DeWitt and G.M. Battery – that as long as the insured has an insurable interest in the property, the insurer cannot rely on his incomplete ownership interest to reduce the payout in the event of a complete loss – are binding on this court. DeWitt, 667 S.W.2d at 707 ("A person with ownership interest less than the whole may recover the whole policy limits under the valued policy statute."); G.M. Battery, 747 S.W.2d at 627 ("Inasmuch as insurable interest is manifest, [the insured] is entitled to recover the full face amount of the policy for the total loss.").

*Third*, Auto Owners cannot distinguish Gorman from DeWitt and G.M. Battery by relying on the provision within its policy which restricts recovery to Schubert's insurable interest at the time of loss. Although Auto Owners could limit available coverage by "strictly defining the interest covered by its policy" under dicta in G.M. Battery, it has not done so in this case. If Auto Owners wanted to take advantage of the G.M. Battery shelter from the application of the valued policy statute, it needed to define the particular ownership interest it intended to cover by its issuance of this policy at the outset. For example, it could condition recovery on the insured's absolute, fee simple ownership of the property. Alternatively, G.M. Battery permits the insurer to obtain representations or warranties on the state of the insured's title and limit its coverage that way. However, Auto Owners did not do that either.

-18-

Instead, it limited recovery to the extent of Schubert's insurable interest at the time of loss – something which can be extremely difficult if not impossible to quantify.  See, e.g., Gorman, 977 S.W.2d at 526 (struggling to monetize "insurable interest" and concluding the insureds' contractual obligation to maintain insurance on the property for the full value of the property "may well have created an insurable interest in the respondents for the policy limits").  If DeWitt teaches us anything, it is that the insurer cannot escape its investigatory burden by conceding the value of the property but reducing the payout amount based on the information it could have discovered through its own diligent investigation at the outset.  Auto Owners' actions in this case fall squarely within G.M. Battery's admonition against the insurer "issu[ing] a policy, collect[ing] the premiums, and then argu[ing] that the value of the insured's insurable interest in the property is less than the coverage it underwrites." 747 S.W.2d at 628; see also King v. Dunlap, 945 S.W.2d 736, 741 (Tenn. Ct. App. 1996) (relying on a case in which the court rejected the insurance company's argument it did not have to pay the full amount of the policy on account of the provision that it "will not pay more than the insurable interest") (citing Parker v. Tenn. Farmers Mut. Ins. Co., No. 141, 1988 WL 138923 (Tenn. Ct. App. Dec. 30, 1988)).

*Fourth and finally*, the coverage limitation attempted by Auto Owners is akin to a contractual clause limiting the insurer's liability on the policy to a pro rata share of the loss based on multiple policies insuring the property.  In Marti v. Economy Fire & Casualty Co., 761 S.W.2d 254 (Mo. Ct. App. 1988), the Missouri Court of Appeals struck down such a pro rata clause as violative of the valued policy statute.  "[A]ny exclusionary provision which attempts to limit the insurer's liability to less than the face value of the policy in a case of total loss is contrary to the valued policy statute and void," concluded the court.  761 S.W.2d at 259; see also St. Paul Reinsurance Co. v. Irons, 45 S.W.3d 366 (Ark. 2001) (disregarding the policy clause prescribing pro rata coverage for the property insured by multiple policies by citing to the Arkansas valued policy statute).  This approach avoids the rigamarole of calculating the correct

pro rata share and monetizing various insurable interests, and appropriately vests with insurance companies the responsibility of protecting its interests *prior* to issuing the policy. We are persuaded the <u>Marti</u> rationale applies to cases like Schubert's.

In sum, we find the policy provision limiting Schubert's recovery to her insurable interest in the covered property is incompatible with the Missouri valued policy statute and is therefore void.

B.

Alternatively, the district court found that, even if the provision limiting Schubert's recovery to her insurable interest in the property were valid, it is inherently ambiguous and therefore cannot be used to reduce her recovery. We agree.

In relevant part, the Auto Owners' policy states: "Subject to the applicable limit of insurance, we will not pay more than the insurable interest the insured has in the covered property at the time of loss." The policy fails to define the term "insurable interest," however. As explained above, case law defines the term "insurable interest" broadly and orthogonally to the concept of legal ownership. <u>See</u> <u>G.M. Battery</u>, 747 S.W.2d at 626 (defining insurable interest as "such a relation or concern in . . . subject matter that [the insurer] will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by happening of the event insured against"). Although it is not lost on us that this definition is not "plain and ordinary," <u>Knob Noster R-VIII Sch. Dist. v. Dankenbring</u>, 220 S.W.3d 809, 816 (Mo. Ct. App. 2007) (requiring courts to adopt a plain and ordinary meaning of an undefined term), it is most difficult to imagine a common meaning of such a narrow and specialized legal term as "insurable interest." Therefore, in the absence of the ordinary meaning, the court must apply a technical – in this case, judicially devised – definition of the term. <u>JAM Inc.</u>, 128 S.W.3d at 894.

-20-

In deciding whether Schubert's recovery can be limited and to what extent, we are guided by two presumptions – that a court must "interpret the policy 'so as to afford rather than defeat coverage,'" id. at 893 (quoting Farm Bureau Town & Country Ins. of Mo. v. Hilderbrand, 926 S.W.2d 944, 947 (Mo. Ct. App. 1996)), and that the provisions designed to restrict coverage are to be construed against the insurer, id. In this respect, we find instructive the Missouri Court of Appeals' decision in JAM Inc., where the insurer refused to pay the full amount of the policy referring to the clause which limited recovery to the extent of the insurer's "financial interest" in the property. 128 S.W.3d at 893-94. Like in this case, the policy did not define "financial interest." Id. Construing the ambiguity against the drafter, the court concluded the term "financial interest" was coextensive with the term "insurable interest," and estimated these interests amounted to "the full amount of the insurance proceeds payable under the policy." Id. at 895. As a result, the court rejected the insurer's reduction of the payout amount on account of this limitation. Id.

So too here, as well. The policy at issue does not define "insurable interest," and while Schubert has a fifty-percent *ownership* interest in the property, the extent of her insurable interest is consideraly less clear. Construing the ambiguity against the drafter, who forewent "the opportunity to clearly word exclusions and limits of liability," S. Gen. Ins. Co. v. WEB Assocs./Electronics, Inc., 879 S.W.2d 780, 782 (Mo. Ct. App. 1994), we conclude Schubert's insurable interest in the property warranted recovery of the stated policy amount.

IV.

Based upon the reasons stated above, we affirm the judgment of the district court.

_____