**Manuel SALAZAR, Plaintiff,**

v.

**TYSON FOODS, INC., Defendant.**

No. 3:12–cv–00093–JEG.

United States District Court,
S.D. Iowa,
Davenport Division.

Jan. 31, 2013.

Rockne Cole, Iowa City, IA, for Plaintiff.

Espnola F. Cartmill, Kelsey J. Knowles, Michael R. Reck, Belin McCormick, P.C., Des Moines, IA, for Defendant.

## ORDER

JAMES E. GRITZNER, Chief Judge.

This matter comes before the Court on a Motion by Plaintiff Manuel Salazar (Salazar) to Remand this case to the Iowa District Court for Louisa County. Defendant Tyson Foods, Inc. (Tyson) resists. The Court conducted a telephonic hearing on this matter on October 22, 2012. Attorney Rockne Cole represented Salazar; attorney Michael Reck represented Tyson. The matter is fully submitted and ready for disposition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following events are stated in Salazar's state court petition and form the basis of this lawsuit. In 1990, Salazar began working for Iowa Beef Packers (IBP), now Tyson,[1] at its processing plant in Columbus Junction, Iowa. In 1997, Salazar suffered a worker's compensation-related injury and was placed on permanent work restrictions. According to Salazar, those restrictions did not prevent him from performing his work, although he did not work as fast as other employees who did not have those restrictions. Salazar further alleges that when he returned to work following his work-related injury, his permanent restrictions caused concern for IBP/Tyson officials.

On June 9, 2010, after Salazar went to a cooler in his work area to check on some hogs, a fellow employee reported observing Salazar pulling up or zipping up his pants. In the report, the employee accused Salazar of urinating on the cooler floor. Salazar, who speaks Spanish, was questioned by a supervisor with a fellow employee interpreting for Salazar. Salazar initially denied urinating, but the supervisor "continued to exert pressure on [Salazar] to admit it." Pet. ¶ 18, Notice of Removal Ex. 2, ECF No. 1–2. The interpreter told Salazar to admit to it and that it would be better for him if he admitted it. Salazar eventually signed a paper that was not translated for him. Salazar asserts he did not understand what he was signing. On June 10, 2010, Tyson terminated Salazar.

On June 8, 2012, Salazar filed a one-count petition in the Iowa District Court for Louisa County against Tyson alleging his termination was against Iowa Public Policy and violates the Iowa Worker's Compensation Statute, Iowa Code § 85.18. Salazar asserts that Tyson pushes its workers as hard as humanly possible to extract surplus value for Tyson's shareholders and that the real reason for his termination was because he could not work as fast or produce as much of a surplus as other workers that did not have his worker's compensation restrictions. Salazar served Tyson with the Original Notice and Petition on June 15, 2012.

Tyson timely removed this case on July 13, 2012, asserting diversity of citizenship jurisdiction under 28 U.S.C. § 1332. Salazar is a citizen of Iowa, and Tyson is a Delaware corporation with its principal place of business in Arkansas. In its Notice of Removal, Tyson alleges that Salazar "seeks damages in excess of $75,000." Notice of Removal ¶ 4, ECF No. 1.

Salazar filed this Motion to Remand stipulating as follows: "I clarify that I am

---

1. Tyson acquired IBP in 2005.

only seeking $73,000 exclusive of interest and costs" and "I further certify that I will not accept, nor will I seek more than $73,000 in [the] State court process." Pl.'s Stip. ¶¶ 3–4, ECF No. 3–2. Salazar argues because Iowa law prohibits specifying the amount in controversy in a petition filed in state court, this Court should find that his stipulation deprives this Court of subject matter jurisdiction. Salazar asserts he is entitled to attorney fees because Tyson lacked an objectively reasonable basis for diversity jurisdiction. Tyson resists the motion asserting that Salazar's arguments confirm that the amount in controversy is met and denies that there is a basis for awarding attorney fees.

## II. DISCUSSION

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. "[The removing party] bears the burden of establishing that the district court had original jurisdiction by a preponderance of the evidence. All doubts about federal jurisdiction should be resolved in favor of remand to state court." *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 975 (8th Cir.2011) (internal citations and quotation marks omitted).

"It is axiomatic the court's jurisdiction is measured either at the time the action is commenced or, more pertinent to this case, at the time of removal." *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir.2011). "The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it. When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S.Ct. 1181, 1194–95, 175 L.Ed.2d 1029 (2010) (internal citations omitted). "The district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000." *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir.2002). It is not required "that unliquidated damages in some specific amount must be proved before trial by a preponderance of evidence." *Id.*

Ordinarily, federal subject matter jurisdiction attaches at the time of removal, and a later attempt by the plaintiff to contest the sufficiency of the amount in controversy by amending his complaint or stipulating his damages will be unavailing. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292–93, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *see also Thatcher v. Hanover Ins. Group, Inc.* 659 F.3d 1212, 1214 (8th Cir.2011) ("[U]nder the *St. Paul Mercury* rule, in a diversity action a plaintiff may not merely amend his complaint after removal to claim damages below the jurisdictional amount and deprive the federal court of jurisdiction.").

### A. Back Pay

■ Tyson argues that "Plaintiff's belated attempt to stipulate to seeking damages of only $73,000, exclusive of costs and interest, ignores a significant part of his requested relief," Def.'s Br. 2, ECF No. 4, and that the stipulation is an "after-the-fact tactical decision rather than an accurate statement of what Salazar sought when suit was *filed.*" *Id.* at 2 n. 2 (emphasis added). Tyson avers that Salazar earned $29,357.64 in wages and approximately $3700 in benefits in the last year of his employment at Tyson, which repre-

sents approximately $33,000 per year in lost wages,[2] and with trial not likely to occur before June 2013, Salazar's back pay damages would exceed $100,000.[3] Tyson maintains that "Salazar's *post hoc* stipulation of seeking $73,000 alters what was plead [sic] and cannot destroy diversity" and that additional evidence Salazar sought more than $75,000 is Salazar's "catch-all request for 'any other relief that this Court may deem appropriate.'" *Id.* at 4.

Salazar defends that because Iowa state court pleading rules [4] preclude a plaintiff from pleading any specific amount of unliquidated damages, he was unable to value his claim at the time he filed his petition. Salazar asserts that his "express stipulation to under $75,000 means that he *cannot* receive more than that, and any award higher that than [sic] in state court would and must be reduced below $75,000.00" and if he "somehow went back into State court only to ask for $1,000,000.00, he would be hailed back into federal court on for [sic] Rule 11 sanctions and a friendly letter from the Iowa Bar." Reply 2, 4, ECF No. 7–1. Quoting *McCorkindale v. American Home Assurance Co.,* 909 F.Supp. 646, 650–51 (N.D.Iowa 1995), Salazar argues that *St. Paul Mercury's* legal certainty test only applies "to cases in which the plaintiff originally claims damages in excess of the jurisdictional amount in controversy," Reply 2, ECF No. 7–1, and that cases, including *St. Paul Mercu-*

ry, "addressing this issue have found the state amount in controversy pleading rules to be dispositive in deciding whether to permit a stipulation to defeat removal." *Id.* The Court must disagree.

Under Salazar's theory, every case removed from Iowa state court on the basis of diversity of citizenship would be subject to remand if, after removal, the plaintiff simply stipulated to an amount in controversy less than the jurisdictional minimum. Contrary to Salazar's assertion, that is not the holding of *St. Paul Mercury,* as the Court clearly stated:

> If the plaintiff could, no matter how bona fide his original claim in the state court, reduce the amount of his demand to defeat federal jurisdiction the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice. The claim, whether well or ill founded in fact, fixes the right of the defendant to remove, and the plaintiff ought not to be able to defeat that right and bring the cause back to the state court at his election. If he does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.

*St. Paul,* 303 U.S. at 294, 58 S.Ct. 586. The Court clarified that "*an amendment in the state court* reducing the claim below the jurisdictional amount *before removal is*

---

**2.** In support of Salazar's wage and benefits information, Tyson has submitted Salazar's 2010 W–2 form, benefit plan data, and the affidavit of David Duncan, Tyson's Human Resources Manager.

**3.** Tyson points out that Salazar does not identify any other employment, and furthermore, the Court should not consider any amount Salazar may have earned from other employment in determining the amount in controversy. *See Schubert,* 649 F.3d at 822–23 ("Neither the existence of a valid defense nor

subsequent events reducing the amount in controversy divest the court of jurisdiction.").

**4.** Iowa Code § 619.18 states that "[i]n an action for personal injury or wrongful death, the amount of money damages demanded shall not be stated in the petition.... However, a party filing the petition ... shall certify to the court that the action meets applicable jurisdictional requirements for amount in controversy."

*perfected* is effective to invalidate removal and requires a remand of the cause." *Id.* at 294 n. 25, 58 S.Ct. 586 (emphasis added).

The preponderance of the evidence standard in determining the amount in controversy *at the time of removal* is not as high a bar as Salazar suggests. In his state court petition, Salazar requested back pay and costs. Without looking to Salazar's more speculative requested relief, Tyson has demonstrated that at the time of removal, the amount in controversy met the jurisdictional minimum. Because defenses, such as mitigation of damages, are not considered in calculating the amount in controversy, *see Schubert,* 649 F.3d at 822–23 ("Neither the existence of a valid defense nor subsequent events reducing the amount in controversy divest the court of jurisdiction."), the back pay award alone could exceed $100,000 by the time judgment is entered in this case.[5]

### B. Reinstatement

■ Tyson also argues that the non-monetary relief for reinstatement that Salazar requests must be considered by the Court in determining the amount in controversy. For this proposition, Tyson cites *Estes v. Accretive Health, Inc.,* No. 10–10858, 2010 WL 3504528, at *2 (E.D.Mich. Sept. 7, 2010) (finding the cost of reinstatement could be considered in determining the amount in controversy where the plaintiff brought a claim for violation of Michigan's Whistle–Blower Protection Act, which "specifically prescribes reinstatement as a remedy where the court finds such relief appropriate" (citing Mich. Comp. Laws § 15.364)); *Riffert v. Walgreen Co.,* 4:07CV1912 JCH, 2008 WL 495643, at *2 (E.D.Mo. Feb. 20, 2008) (reasoning in a case involving violations of the Missouri Human Rights Act, which allows for an award reinstating a terminated employee, *see* Mo.Rev.Stat. § 213.075.11(1) (requiring "violators of the MHRA 'to take such affirmative action, ... including, but not limited to back pay; hiring; reinstatement ....' "), that "[a]t the time of [plaintiff]'s alleged constructive discharge [sixteen months earlier], he was earning approximately $37,674 per year," which "alone could exceed the amount in controversy requirement by the time this matter is resolved"); *Fetters v. United*

---

5. Salazar asks this Court to adopt the district court's reasoning in *McCorkindale v. Am. Home Assur. Co./A.I.C.,* 909 F.Supp. 646 (N.D.Iowa 1995), and *Halsne v. Liberty Mut. Group,* 40 F.Supp.2d 1087, 1089 (N.D.Iowa 1999), which similarly involved actions removed from Iowa state courts. In both cases, the plaintiffs clarified post-removal that their requested damages totaled less than the jurisdictional minimum. Distinguishable from the present case, however, both those cases were actions for bad faith denial of insurance benefits and the requested damages included both compensatory and punitive damages. *See McCorkindale,* 909 F.Supp. at 648; *Halsne,* 40 F.Supp.2d at 1088. The court found that due to Iowa's state court pleading rules, the faces of the plaintiffs' state court petitions were inadequate to determine the amount in controversy. *See McCorkindale,* 909 F.Supp. at 656 (ordering the parties to submit sworn affidavits "stating *facts* that establish to a reasonable probability the monetary value of the damage plaintiff sought at the time complaint was filed" and based thereupon the court would "determine whether the defendants have met their burden ... by a preponderance of the evidence" (internal quotation marks omitted)); *Halsne,* 40 F.Supp.2d at 1090–91 (finding where punitive damages were pivotal in determining the amount in controversy, the Iowa state court petition was not removable on its face, and therefore the plaintiff's post-removal stipulation clarified, rather than amended, the amount sought at the time of removal).

In the present case, although Iowa state court pleading rules similarly restricted Salazar from pleading a *specific amount* in damages, Salazar pled calculable damages, namely past and future wages. The Court does not have to resort to speculative damages in determining Tyson has met its burden.

*Parcel Service, Inc.,* 1:06 CV–0542–DFH–WTL, 2006 WL 2375493, at *2 (S.D.Ind. Aug. 16, 2006) ("In evaluating the amount in controversy requirement under 28 U.S.C. § 1332, the court may not ignore the request for reinstatement. Plaintiffs cannot prevent removal by 'insisting that injunctions do not count toward the amount in controversy.'" (quoting *Rubel v. Pfizer Inc.,* 361 F.3d 1016, 1020 (7th Cir. 2004))).

Tyson also relies on *Gable v. MSC Waterworks Co., Inc.,* 12–CV–0047–CVE–PJC, 2012 WL 1118980, at *4 (N.D.Okla. Apr. 3, 2012), asserting that it has an identical fact pattern to the present case and that in determining the amount in controversy, the *Gable* court considered the value of the non-monetary relief the plaintiff requested. In *Gable,* the plaintiff's state court petition sought "actual damages in excess of $10,000, punitive damages in excess of $10,000, interest, costs, attorney fees, and reinstatement." *Id.* at *1. Based on the allegations in the state court petition, the defendant removed asserting diversity of citizenship jurisdiction and alleging, *inter alia,* that the amount in controversy exceeded the jurisdictional minimum because the plaintiff, whose employment was valued at approximately $35,000 per year, sought reinstatement for an indefinite period, so the monetary and non-monetary relief exceeded $75,000. *Id.* After the defendant moved to dismiss the case, the plaintiff filed a motion to remand along with an amended complaint, which purportedly clarified the factual and legal bases of his claims stating that he sought "actual damages in the amount of $65,000, interest, costs, attorney fees, expert fees, reinstatement, fringe benefits, and other relief." *Id.* The amended complaint also discounted the punitive damages requested in the state court petition arguing they should not be considered in calculating the amount in controversy because the defendant had not demonstrated recovery of punitive damages was likely. *Id.* Ultimately, the court determined the amount in controversy was met without looking at the amended complaint noting that "[w]hile punitive damages are mentioned in the notice of removal, defendant actually relies on plaintiff's request for reinstatement as the primary evidentiary support for its assertion that the amount in controversy exceeds the jurisdictional amount." *Id.* at *4.

Arguably distinguishable from than the present case, the *Gable* plaintiff did not file a *stipulation* stating he sought no more that $65,000; however, under the facts of that case, the amended complaint served a similar purpose. As directed by the removal statute, the *Gable* court's consideration of non-monetary relief was properly premised on the original petition at the time of removal and not upon the amended complaint. *Id.* ("The Court must consider the allegations of the plaintiff's pleadings on file at the time of removal to determine if it appears to a legal certainty that the amount in controversy exceeds $75,000." (citing *Miera v. Dairyland Ins. Co.,* 143 F.3d 1337, 1340 (10th Cir.1998))). This Court, also, must focus on the state court petition at the time of removal.

In his state court petition, Salazar requested "lost wages, *restoration of his job at previous seniority,* costs, and any other relief that this Court may deem appropriate." Pet. ¶ 34, Notice of Removal Ex. 2, ECF No. 1–2 (emphasis added). Even if the Court were to allow Salazar's *post hoc* stipulation, that stipulation in no way retracts the requested non-monetary relief, that is, the restoration of his job; therefore, the Court must consider the *value* of the requested non-monetary relief in addition to the amount stated in Salazar's stipulation in determining the amount in controversy. *See Usery v. Anadarko Petro.*

*Corp.*, 606 F.3d 1017, 1018 (8th Cir.2010) ("[This court] ha[s] held repeatedly that in a suit for declaratory or injunctive relief the amount in controversy is the *value* to the plaintiff of the right that is in issue." (emphasis added) (citations omitted)). Since Iowa law allows for the recovery of lost future wages in wrongful termination cases, *see generally Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 687 (Iowa 1990), the Court must add the value of reinstating Salazar to his previous position at the salary Tyson paid Salazar—$33,000 per year, or approximately $2750 per month—to Salazar's stipulation of damages. Salazar requests an indefinite period of reinstatement; however, the Court need only add the value of one month's reinstatement to Salazar stipulated damages of $73,000 for the value of Salazar's claim to exceed the jurisdictional minimum of $75,000.

The Court finds Salazar's stipulation is an impermissible and unsuccessful *post hoc* attempt to cap his requested damages to defeat federal jurisdiction. *See Bell v. Hershey Co.*, 557 F.3d 953, 958 (8th Cir. 2009) ("Where, as here, [Iowa] state law forbids pleading a specific amount in the complaint, any attempt to do so is a legal nullity.... In order to ensure that any attempt to remove would have been unsuccessful, [plaintiff] could have included a binding stipulation *with his petition* stating that he would not seek damages greater than the jurisdictional minimum upon remand; *it is too late to do so now.*" (emphasis added) (internal citations omitted)). Further, even if the Court were to allow the stipulation, Tyson would nonetheless have met its burden because the value of Salazar's non-monetary relief would have been added to the stipulated amount of damages in determining the amount in controversy at the time of removal.

## C. Attorney Fees

Based upon the Court's disposition of this motion Salazar's request for attorney fees is moot.

## III. CONCLUSION

Tyson has demonstrated by a preponderance of the evidence that at the time of removal, the amount in controversy necessary for diversity jurisdiction was met and Salazar's post-removal stipulation to less than the jurisdictional minimum amount in controversy should not be allowed to destroy diversity jurisdiction. Accordingly, Plaintiff's Motion to Remand [3] must be **denied.**

**IT IS SO ORDERED.**