PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JTH TAX, INCORPORATED, d/b/a
Liberty Tax Service,

  *Plaintiff-Appellant,*

v.

HARRY F. FRASHIER, II,

  *Defendant-Appellee.*

No. 09-2262

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Raymond A. Jackson, District Judge.
(2:09-cv-00040-RAJ-JEB)

Argued: September 23, 2010

Decided: November 10, 2010

Before MOTZ, KING, and DAVIS, Circuit Judges.

Reversed by published opinion. Judge Motz wrote the opinion, in which Judge King and Judge Davis joined.

## COUNSEL

**ARGUED**: David Andrew Lindley, Jr., LIBERTY TAX SERVICE, Virginia Beach, Virginia, for Appellant. Dannielle C. Hall-McIvor, TAYLOR & WALKER, PC, Norfolk, Virginia, for Appellee. **ON BRIEF**: Joseph Knowles, LIBERTY

TAX SERVICE, Virginia Beach, Virginia, for Appellant. Todd M. Gaynor, TAYLOR & WALKER, PC, Norfolk, Virginia, for Appellee.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

JTH Tax, Inc. ("Liberty") appeals from an order dismissing its complaint for lack of subject matter jurisdiction. Liberty contends that the district court erred in holding that its complaint failed to meet the $75,000 amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332(a). We agree and so reverse.

I.

Liberty franchises thousands of tax preparation offices nationwide. The dispute before us arises from its relationship with Harry Frashier, one of its franchisees. In 2006, Frashier signed a franchise agreement with Liberty granting him the right to operate Liberty Tax Service franchises in a designated area of West Virginia. In return, Frashier agreed to several post-termination provisions, including a covenant not to compete and a requirement that he return all customer lists and equipment to Liberty.

Frashier operated a Liberty franchise tax office without incident until 2008. On August 26 of that year, after Liberty had filed, but then dismissed, a lawsuit alleging Frashier's breach of the agreement, Frashier offered to sell Liberty a right of first refusal for the purchase of Frashier's franchise territory for $80,000. When the parties failed to agree on the terms of a sale, Frashier closed his franchise, which prompted Liberty to terminate its agreement with Frashier.

This dispute centers on what happened next. On January 28, 2009, Liberty filed a complaint in the Eastern District of Virginia, seeking $80,000 in damages and a permanent injunction compelling Frashier's compliance with the post-termination provisions of the franchise agreement. Specifically, Liberty claimed that Frashier breached his post-termination duties by using his former office to support a competing tax enterprise and by failing to return the requisite materials to Liberty. Frashier responded that he merely leased office equipment and furniture to a different tax venture, actions he described as consistent with the agreement. He further claimed that he now offers only free tax preparation services to the indigent.

Liberty never amended its complaint, but in its subsequent motion for summary judgment, Liberty refined its damages calculation, seeking $60,456.25 in money damages and injunctive relief. The district court *sua sponte* dismissed Liberty's complaint for failure to meet the $75,000 amount in controversy requirement for diversity jurisdiction. When Liberty timely moved for alteration of the judgment under Federal Rule of Civil Procedure 59(e), the court denied the motion.

Liberty then noted this appeal. We review de novo the judgment of the district court dismissing the complaint for lack of subject matter jurisdiction. *See Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 311 (4th Cir. 2009).*

## II.

In most cases, the "sum claimed by the plaintiff controls" the amount in controversy determination. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). If the

---

*Liberty also appeals the district court's order denying the Rule 59(e) motion. Given our reversal of the judgment dismissing the complaint, we do not reach this question.

plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if "it is apparent, *to a legal certainty*, that the plaintiff cannot recover the amount claimed." *Id.* at 289 (emphasis added).

Defendants, seeking dismissal of diversity actions for lack of a sufficient amount in controversy, must therefore shoulder a heavy burden. They must show "the legal impossibility of recovery" to be "so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Wiggins v. N. Am. Equitable Life Assurance Co.*, 644 F.2d 1014, 1017 (4th Cir. 1981) (internal quotation omitted). A mere dispute over the mathematical accuracy of a plaintiff's damages calculation does not constitute such a showing. *See McDonald v. Patton*, 240 F.2d 424, 425 (4th Cir. 1957) (noting that plaintiffs may secure federal jurisdiction even when "it is apparent on the face of the claim" that the claim to the requisite amount is subject to a "valid defense").

With these controlling principles in mind, we turn to the case at hand.

III.

Courts generally determine the amount in controversy by reference to the plaintiff's complaint. *See Wiggins*, 644 F.2d at 1016 ("Ordinarily the jurisdictional amount is determined by the amount of the plaintiff's original claim, provided that the claim is made in good faith."). If the complaint in good faith alleges a sufficient amount in controversy, "[e]vents occurring subsequent" to the filing of the complaint "which reduce the amount recoverable below the statutory limit do not oust jurisdiction." *St. Paul Mercury*, 303 U.S. at 289-90.

Here, Liberty's complaint—which it has not amended —alleges $80,000 in damages, a sum sufficient to exceed the $75,000 amount necessary for diversity jurisdiction. Liberty's later downward adjustment made in its motion for summary

judgment (but not in any amended complaint) does not constitute a "subsequent reduction of the amount claimed" sufficient to "oust the district court's jurisdiction." *Id.* at 295; *see also Griffin v. Red Run Lodge, Inc.*, 610 F.2d 1198, 1204 (4th Cir. 1979) (holding that "[o]nce jurisdiction exists, subsequent events, such as the determination that one of the aggregated claims was without merit, do not destroy" jurisdiction).

In other words, jurisdiction turns not on the sum contained in Liberty's summary judgment motion, but on the good faith of the allegation in its complaint of an adequate jurisdictional amount. The district court did not find, nor has Frashier even argued, that Liberty made a bad faith claim of $80,000 in its complaint. Accordingly, the complaint appears sufficient to allege an adequate jurisdictional amount.

## IV.

To be sure, even a plaintiff whose complaint alleges a sufficient amount in controversy cannot secure jurisdiction "if, from the proofs, the court is satisfied to a [legal] certainty that the plaintiff never was entitled to recover that amount." *St. Paul Mercury*, 303 U.S. at 289. But even if Liberty's reassessment of its damages demonstrated to a legal certainty that it could recover only the $60,456.25 requested in its summary judgment motion, dismissal for lack of jurisdiction would still constitute error here.

This is so because, like requests for money damages, requests for injunctive relief must be valued in determining whether the plaintiff has alleged a sufficient amount in controversy. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."); *Glenwood Light & Water Co. v. Mut. Light, Heat & Power Co.*, 239 U.S. 121, 125 (1915) (finding jurisdiction by looking at future value generated by injunction). Moreover,

plaintiffs may aggregate smaller claims in order to reach the jurisdictional threshold. *See Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995). Therefore, the district court should have considered not only the amount of money damages Liberty requested but also the injunctive relief it sought when determining jurisdiction.

Consideration of the requested injunctive relief compels the conclusion that Liberty's claim alleges a sufficient amount in controversy. Even if the $60,456.25 alleged in its summary judgment motion constitutes the sole money damages sought by Liberty, its requested injunctive relief need only have a good faith worth of $14,543.76, i.e. the amount necessary to yield a combined value in excess of $75,000.

We ascertain the value of an injunction for amount in controversy purposes by reference to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant. *See Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002). In this case, Liberty has demonstrated that the injunction, whether valued for the benefit it confers on Liberty or the detriment it imposes on Frashier, arguably yields a figure that exceeds the necessary jurisdictional amount.

With respect to the first, Liberty proposes two distinct ways of calculating the value of the injunction, both of which produce a figure well over $14,543.76. First, Liberty proposes adhering to its regular accounting practice of valuing franchises at 130% of the previous year's net receipts. Using such a formula, it values Frashier's former franchise, and thus the injunction forbidding his alleged improper use of that franchise, at $78,593.13. Second, it proposes a focus on the reputational value generated by the sought injunction. Under this approach, courts consider the ongoing diminution in Liberty's market credibility allegedly caused by Frashier's intransigence. *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994) (noting that "the potential loss of goodwill also sup-

port[s] a finding of irreparable harm" for the purpose of granting injunctive relief). Liberty estimates the reputational value of the injunction to be $12,817,482—the amount it spent on advertising in fiscal year 2009.

As for cost to Frashier, Liberty calculates the amount to be a minimum of $30,000. Liberty derives that figure from Frashier's 5-year lease of his former Liberty office at $500 per month, arguing that an injunction prohibiting such a lease would cost Frashier $30,000 in lost profits.

We pass no judgment on the merits of any of these formulations. *See United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999) (noting that "[w]hen a factual attack on subject matter jurisdiction involves the merits of a dispute, the proper course of action . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits" (internal quotation and alteration omitted)). For our purposes, all that matters is that we cannot say *with legal certainty* that Liberty's injunction is worth less than the requisite amount. Indeed, all of Liberty's calculations employ reasoning that is at least facially plausible, and Frashier proposes no methodology of his own suggesting that the injunction lacks the requisite value.

## V.

For the foregoing reasons, the judgment of the district court is

*REVERSED.*