**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-1380**

CBX TECHNOLOGIES, INCORPORATED,

        Plaintiff - Appellant,

    v.

GCC TECHNOLOGIES, LLC, f/k/a Government Contract
Consultants, LP,

        Defendant - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.    James K. Bredar, District Judge.
(1:10-cv-02112-JKB)

Submitted:  November 23, 2011    Decided:  December 13, 2011

Before DUNCAN, KEENAN, and DIAZ, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

John Christopher Belcher, Oxon Hill, Maryland, for Appellant.
Keith Leon Baker, BARTON, BAKER, THOMAS & TOLLEE, McLean,
Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

CBX Technologies, Inc. ("CBX"), a California corporation, brought this one-count breach of contract action against GCC Technologies, LLC ("GCC"), a Maryland corporation, pursuant to 28 U.S.C. § 1332 (2006). The district court granted GCC's motion to dismiss for lack of subject matter jurisdiction, and, alternatively, for failure to state a claim. CBX appeals.

In early 2009, CBX became interested in pursuing a government contract with the United States Department of Education's Federal Student Aid ("FSA") program. CBX, however, was not eligible to enter a bid as a primary contractor, so it sought out an eligible contractor with whom it could jointly bid, eventually contacting GCC. On September 3, 2009, CBX and GCC entered into a teaming agreement pursuant to which they submitted a bid (the Teaming Agreement). CBX alleges that the Teaming Agreement provided that GCC would provide 51% of the full-time employees and receive 51% of the contract's value, while CBX was to provide 49% of the full-time employees and receive 49% of its value. The Teaming Agreement provided that it was to "automatically expire upon . . . [t]he execution of a subcontract agreement between GCC and CBX pursuant to a Prime Contract by the [Department of Education] to GCC for the Project." (J.A. 24).

2

In late September 2009, GCC was awarded the contract, which had a value of $2,401,494.40. On approximately October 1, 2009, five CBX employees were in place to work on the FSA contract, though it is not clear when work began.

In June 2010, CBX and GCC executed a subcontract agreement with a retroactive effective date of November 9, 2009 (the Subcontract Agreement). The Subcontract Agreement provides that it "supersedes all previous written or oral representation or agreements between GCC and [CBX], if any, including any [T]eaming [A]greement, . . . and constitutes the entire agreement between GCC and [CBX] with respect to the subject matter hereof." (J.A. 53). The Subcontract Agreement also specifies that CBX's employees working under the subcontract were to remain under CBX's direction and control. CBX asserted, however, that "starting almost immediately after" the parties began work on the contract, GCC President James Bailey attempted to supervise the employees in a manner they found offensive, causing four of the five employees to quit by early 2010. Bailey also is alleged to have interfered with CBX's attempts to replace the employees. After some initial communications, Bailey sent a letter to CBX on July 15, 2010, terminating the parties' agreement.

CBX claims that it should have received at least $1,176,000 from its work in the FSA contract. As of the filing

3

of its complaint, however, CBX had been paid less than $200,000. Accordingly, CBX seeks $976,000 in compensatory damages. CBX's specific allegation is that "GCC has . . . breached the [T]eaming [A]greement with CBX as subsequently incorporated into the written [S]ubcontract [A]greement by" GCC's interfering with CBX's employees' work and retention, by refusing to allow CBX to hire new employees to work under the subcontract, and by terminating the agreement without just cause. (J.A. 7).

GCC filed an answer, asserting that CBX failed to state a claim upon which relief could be granted. Subsequently, GCC moved to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and, alternatively, under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

The district court granted GCC's motion, dismissing the case with prejudice. The court observed that the suit alleged a breach only of the Teaming Agreement, yet the Teaming and Subcontract Agreements made it "beyond clear that the [T]eaming [A]greement was not incorporated into the [S]ubcontract [A]greement." (J.A. 63). Because "CBX's allegations about GCC's actionable conduct appear to relate to the time after the teaming agreement expired," the court concluded that the amount-in-controversy requirement was not satisfied. (Id.). The district court went on to explain that even if the teaming agreement had been in effect and been

4

breached by GCC, jurisdiction still would be lacking because the Teaming Agreement "expresses . . . only an intent that CBX would receive 49 percent under the contract that the parties hoped would be awarded in the future," and as such, the court had no way to calculate damages.

The district court also ruled, in the alternative, that CBX failed to state a claim. In this regard, the court reiterated that the Teaming Agreement was not in effect at the time of the alleged breach and that, even if it had been in effect, the Teaming Agreement has no provision to measure damages.

We are constrained to vacate the district court's order and remand this action for further proceedings. We begin, as we must, with subject matter jurisdiction. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998). The relevant principles of the amount-in-controversy requirement, 28 U.S.C. § 1332 (2006), are well settled. Generally, "the sum claimed by the plaintiff controls" the determination of the amount in controversy, and if a plaintiff seeks a sum that satisfies the statutory minimum, "a federal court may dismiss only if it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed." JTH Tax, Inc. v. Frashier, 624 F.3d 635, 638 (4th Cir. 2010) (internal quotation marks and emphasis omitted).

Where, as here, a defendant "challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). Where "the jurisdictional facts are so intertwined with the facts upon which the ultimate issues on the merits must be resolved, the entire factual dispute is appropriately resolved only by a proceeding on the merits." Id. at 348 (internal citations and quotation marks omitted).

Here, the jurisdictional and merits facts are intertwined because both the jurisdictional and merits inquiries turn on whether the Teaming Agreement was in effect at the time of the alleged breach. As to jurisdiction, whether the Teaming Agreement was in effect is dispositive because the complaint alleges breach only of the Teaming, and not the Subcontract, Agreement. If the Teaming Agreement was not in effect at the time of the alleged breach, it would be clear to a legal certainty that CBX did not meet the amount-in-controversy requirement. As to the merits, whether the Teaming Agreement was still in effect is dispositive because the contract allegedly breached was the Teaming Agreement. Cf. Jadhav, 555 F.3d at 349-50 (concluding jurisdictional and merits factual issues were not intertwined because elements of respective inquiries differed). The district court's reliance on the same

6

reasons to dismiss the action on both jurisdictional and merits grounds further indicates that the facts relating to the two issues are intertwined.

Because the jurisdictional facts and the facts relating to the merits of CBX's claim are intertwined, the district court erred in basing dismissal on lack of subject matter jurisdiction. See Adams v. Bain, 697 F.2d 1213, 1220 (4th Cir. 1982). Rather, the factual dispute -- whether the Teaming Agreement was in effect at the time of the alleged breach -- must be assessed in a proceeding on the merits. As to the merits, GCC argues that, under Rule 12(b)(6), CBX failed to state a claim on which relief could be granted. To survive a Rule 12(b)(6) motion, CBX's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)) (emphasis omitted). A court may consider documents a defendant attaches to its Rule 12(b)(6) motion if the documents "w[ere] integral to and explicitly relied on in the complaint and if the plaintiff[] do[es] not challenge [their] authenticity." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (internal quotation marks and alteration omitted).

7

In evaluating the Rule 12(b)(6) motion, the district court properly considered the copies of the Teaming and Subcontract Agreements GCC attached to its motion. However, the record does not reveal whether the Teaming Agreement was in effect at the time of the alleged breach. GCC was awarded the FSA contract in late September 2009, and CBX had its five employees in place on approximately October 1, 2009. CBX alleges that Bailey began acting in a way the employees found offensive "[s]tarting almost immediately after GCC and CBX started work" on the project; that conduct forms the basis for the claim of breach. The Subcontract Agreement did not go into effect, and thereby terminate the Teaming Agreement, until November 9, 2009. It is not clear from the record exactly when work began, and when the alleged breach occurred. The dispositive factual issues -- issues that were not properly resolved on the face of the pleadings – are (1) whether work began before the November 9, 2009 retroactive effective date of the Subcontract Agreement, and if so, (2) whether a breach occurred before November 9, 2009. Thus, the district court erred in finding on the record before it that the Teaming Agreement was no longer in effect at the time of the alleged breach, and in finding a lack of jurisdiction on this basis.

The district court's alternative rationale for dismissal -- that CBX did not state a claim even if the Teaming

Agreement had been in effect at the time of the alleged breach -- is also unpersuasive. First, the district court's analysis appears to rest on its own characterization of the Teaming Agreement as manifesting "only an intent" that CBX would receive 49% of the contract's value, and as providing "no mechanism for payment." Second, the court does not explain why CBX was obliged to show a precise measure of damages in order to survive GCC's Rule 12(b)(6) motion. Accordingly, we are not able to uphold the dismissal on this alternate basis.

For the foregoing reasons, we conclude that the district court erred in dismissing CBX's complaint. Accordingly, we vacate the court's order and remand for further proceedings consistent with this opinion. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

VACATED AND REMANDED