**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1377

MINISTRY OF DEFENCE OF THE STATE OF KUWAIT,

Plaintiff – Appellant,

and

MINISTRY OF HEALTH OF THE STATE OF KUWAIT,

Plaintiff,

v.

JOSEPH MOHAMMAD NAFFA; NAFFA & ASSOCIATES, LLP,

Defendants – Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Michael Stefan Nachmanoff, District Judge.  (1:22-cv-01270-MSN-JFA)

Argued:  March 19, 2024                                    Decided:  June 18, 2024

Before NIEMEYER, GREGORY, and AGEE, Circuit Judges.

Reversed, vacated, and remanded by published opinion.  Judge Gregory wrote the opinion, in which Judge Niemeyer and Judge Agee concurred.

**ARGUED:**  Nowell David Beckett Bamberger, CLEARY GOTTLIEB STEEN & HAMILTON LLP, Washington, D.C., for Appellant.  Courtney A. Miller, HWG LLP,

Washington, D.C., for Appellees.  **ON BRIEF:**  Rathna J. Ramamurthi, CLEARY GOTTLIEB STEEN & HAMILTON LLP, Washington, D.C., for Appellant.  Timothy J. Simeone, HWG LLP, Washington, D.C., for Appellees.

———————

GREGORY, Circuit Judge:

The Ministry of Defence of the State of Kuwait entered three contracts with Joseph M. Naffa and his fictitious law firm, Naffa & Associates, LLP, under which Naffa and his firm were to provide legal advice to the Ministry's Defence Attaché Office in Washington, D.C.  Naffa also represented the Ministry in transactions related to its real estate purchases in Virginia.  Unbeknownst to the Ministry, Naffa was not authorized to practice law in the United States, and Naffa & Associates, LLP was not a real law firm. Naffa did not disclose these facts or correct anyone who referred to him as a lawyer when he provided legal advice and services to the Office.

The Ministry eventually became aware that Naffa was not authorized to practice law in the United States and that he kept a credit meant for the Ministry from one of the real estate transactions.  The Ministry subsequently sued Naffa and Naffa & Associates, LLP alleging that Naffa breached their agreements when he provided legal services despite not being authorized to practice law in the United States as, it says, the contracts required; and that he converted its funds from the real estate transaction.  The district court dismissed the Ministry's claims under Rule 12(b)(1), and the Ministry now appeals.

The only issue ripe for our review is whether the Ministry pleaded damages sufficient to meet the amount in controversy requirement.  We conclude that the district court erred in dismissing the Ministry's claims for lack of subject matter jurisdiction because the complaint contains sufficient allegations to invoke the court's diversity jurisdiction.  Accordingly, we reverse the district court's jurisdictional decision, vacate all other determinations the court made, and remand the case for further proceedings.

3

I.

The Ministry of Defence of the State of Kuwait (the "Ministry") is a foreign governmental body organized within the executive branch of Kuwait's government. The Ministry implements Kuwait's defense policy, governs all branches of Kuwait's Armed Forces, and conducts business in the United States through its Defence Attaché Office (the "Office"). The Office is associated with the Kuwait Embassy in Washington, D.C. and is led by a Kuwaiti representative known as the Defense Attaché.

In 2011, the Ministry authorized the Office to hire an American law firm to assist with its increased need for legal advice and services. The Office sought proposals from what it believed were competing law firms. Naffa & Associates, LLP submitted a "Proposal to Provide Legal Counsel Services." J.A. 72. The proposal referred to Naffa & Associates, LLP as the "Firm" and was on "Naffa Law" letterhead, which included "Attorneys & Counselors" in the subheading. *Id.* The proposal described the types of legal representation the firm could provide to the Office and the firm's approach to representation. *Id.* Naffa signed the proposal on behalf of Naffa & Associates, LLP as "Yoseph M. Naffa, Esq." J.A. 73.

The Office awarded Naffa the contract for an annual retainer of $45,000. J.A. 75. The then-acting Defense Attaché, Col. Adel Al Saeed, executed the agreement on behalf of the Ministry. J.A. 76. Naffa executed the agreement on behalf of Naffa & Associates, LLP as "Joseph M. Naffa, Esq.," spelling of his first name with a "J" instead of a "Y" as he had previously done. *Id.* The agreement remained effective for three years and the Office paid Naffa $45,000 each year.

4

In 2014, Naffa submitted a "Proposal to Provide Legal Advisory Services" to the Office. J.A. 78. The new proposal was on "Naffa & Associates" letterhead, referred to "Naffa & Associates" as the "Firm," and described the "scope of the legal services" that the firm was to provide to the Office. J.A. 75. The parties entered their second agreement that year and increased the annual retainer fee to $65,000. The Office paid Naffa $65,000 each year in 2014, 2015, and 2016, and paid him $85,000 in 2017. J.A. 22.

At some point before April 1, 2018, Naffa submitted a proposal for a new agreement with an $85,000 annual retainer. At the time, Al Sharhan, a new Defense Attaché who did not have a prior relationship with Naffa, ran the Office. Al Sharhan knew that Naffa represented the Office in its legal affairs, and Naffa assured him that he was legally qualified to do so. With that reassurance, Al Sharhan executed the Office's third agreement with Naffa on April 1, 2018. The third agreement appeared on "International Compliance Group" letterhead, outlined the scope of legal services, and formally increased the annual retainer to $85,000. Naffa signed the new agreement as "Joseph M. Naffa, Esq. LLM, Ph.D. Legal Counsel," this time, adding additional post-nominal letters and credentials to his signature. J.A. 81–82. The Office paid Naffa $85,000 under the agreement in 2018 and again in 2019.

Naffa also represented the Office in real estate transactions when it purchased four houses in Virginia. The Office paid Naffa $50,000 in total for those transactions via checks payable to Naffa & Associates, LLP.

At the end of 2019, the Office asked Naffa to produce documentation demonstrating that he was licensed to practice law in the United States. In response, Naffa presented his

5

American Bar Association card and several graduate school degrees claiming that he was a licensed attorney, and that the Bar Association card was his license. At some point thereafter, the Office investigated and learned that Naffa never passed a bar exam, was not licensed to practice law anywhere in the United States, and never established "Naffa & Associates, LLP" as a legal entity.

Attempting to uncover any further dishonesty, the Office audited one of the real estate transactions that Naffa represented it in. The Office discovered that Naffa instructed the closing agent on that transaction to disburse a credit to him that was meant for the Office. Naffa did not disclose the credit to the Office, and the version of the purchase contract he submitted to the Office's accountant did not show the credit or the payment to Naffa. Naffa eventually returned the full amount of the credit to the Office.

The Office accused Naffa of deception and engaging in the unauthorized practice of law. After Naffa and his attorneys denied the accusations, the Office submitted a complaint against Naffa to the D.C. Committee on the Unauthorized Practice of Law (the "UPL Committee"). After investigating, the UPL Committee concluded that (1) Naffa did not engage in the unauthorized practice of law because he served as in-house counsel for the Office and other offices in Kuwait's government, and (2) the Office did not have a reasonable expectation that Naffa was an attorney because the Defense Attaché who hired Naffa knew that Naffa was not authorized to practice law in the United States. J.A. 101–03. The Committee explicitly took "no position on any other matter in dispute between the parties." J.A. 103.

6

In total, the Office paid Naffa $635,000 throughout the duration of the parties' contractual relationship — $135,000 under the first agreement, $280,000 under the second agreement, $170,000 under the third agreement, and $50,000 for representing the Office in various real estate transactions.

## II.

The Ministry filed suit in November 2022, and Naffa moved to dismiss the complaint. After the motion was fully briefed, but before the court ruled on it, the Ministry moved to amend. The court granted the Ministry's request, and the Ministry filed an amended complaint asserting claims against Naffa for breach of contract, fraud in the inducement, breach of fiduciary duty, tortious conversion, and promissory estoppel. The Ministry later abandoned all claims except those for breach of contract and tortious conversion. Naffa moved to dismiss the two remaining claims contending that the Ministry failed to allege facts sufficient to confer federal court jurisdiction under 28 U.S.C. § 1332 or state a claim under Federal Rule of Civil Procedure 12(b)(6).

The district court dismissed the complaint on jurisdictional grounds, but addressed issues related solely to the merits along the way. It began its assessment with the breach of contract claim, analyzing the parties' three agreements. It held that the first and second agreements were time-barred under Virginia law and could not be saved by equitable tolling. Regarding the third agreement, the court held that the agreement's terms did not require Naffa to be a licensed attorney, and the parol evidence rule prohibited the court

7

from considering extrinsic evidence of the parties' intentions because the agreement was not ambiguous.

The court went on to analogize the case to a situation in which a person pays for a flu shot expecting to have it administered by a doctor, but a nurse administers the shot instead. To recover damages in that scenario, the court said, the person would have to show that they did not get the shot, or that they suffered a harm that would not have occurred had a doctor (instead of a nurse) administered it.

Applying that rationale to this case, the court held that even if Naffa breached the third agreement, the court lacked jurisdiction because the claim was worth less than $75,000. In the court's view, the Ministry could not show that it did not receive legal advice or that its outcome would have been different if it was represented by a licensed attorney, and Naffa's services had at least some value so the Ministry could only recover the amount it paid more than the value of Naffa's services. Because the Ministry did not plead that it paid Naffa at least $75,000 more than his services were worth, the court held that the Ministry failed to allege breach of contract damages sufficient to satisfy 28 U.S.C. § 1332(a)(1). The court also held that it could not exercise supplemental jurisdiction over the Ministry's conversion claim without the breach of contract claim. The court therefore dismissed the case for lack of subject matter jurisdiction.

## III.

We review a district court's dismissal for lack of subject matter jurisdiction de novo. *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). Where, as here, a defendant

urges dismissal on the grounds that the complaint's allegations are insufficient to confer jurisdiction, we assess the motion under the same standard as one brought under Rule 12(b)(6). *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Under that standard, we accept the truth of all facts alleged in the complaint and must deny the motion if those facts are sufficient to invoke subject matter jurisdiction. *Id*.

The Ministry seeks to invoke federal court diversity jurisdiction over this case. Diversity jurisdiction exists where a foreign state asserts a claim against a citizen of a state, and the claims asserted are worth more than $75,000. 28 U.S.C. § 1332(a)(4). Thus, the only issue presented here is whether the Ministry pleaded damages sufficient to meet the amount in controversy requirement.

Courts generally accept the sum claimed by the plaintiff in good faith as the amount in controversy. *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010). Dismissal for failure to meet the amount in controversy is therefore appropriate only where the court determines to a legal certainty that the plaintiff cannot recover the amount it seeks or seeks an amount that the plaintiff is not entitled to for the purpose of establishing jurisdiction. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). Consequently, a district court must exercise jurisdiction unless "the legal impossibility of recovery" virtually negates the plaintiff's good faith in asserting the claim. *JTH Tax, Inc.*, 624 F.3d at 638 (internal quotation omitted).

Good faith is not negated because events during the litigation reduce the amount recoverable below the statutory threshold or the plaintiff is otherwise unable to recover the amount it initially sought. *St. Paul Mercury Indem. Co.*, 303 U.S. at 289–90. Thus, a

9

defense to a claim, even one that appears meritorious from the face of the complaint, does not oust federal court jurisdiction. *Id.* at 292. As the Supreme Court has stated:

> "[T]here might be a perfect defense to the suit for at least the amount not yet due, yet the fact of a defense, and a good defense, too, would not affect the question as to what was the amount in dispute . . . . [F]or who can say in advance that that defense will be presented by the defendant, or, if presented, sustained by the court?'"

*Smithers v. Smith*, 204 U.S. 632, 643 (1907). Accordingly, the Supreme Court has advised that unless a law requires a different approach, the damages the plaintiff claims in good faith determine the amount in controversy. *See St. Paul Mercury Indem. Co.*, 303 U.S. at 288.

The district court below did not heed the Supreme Court's advice. Instead, the district court erroneously considered Naffa's potential defenses and evidentiary issues and concluded that any damages that the Ministry could recover after accounting for those defenses would fall below the statutory minimum. In doing so, the court improperly and prematurely assessed the merits of the Ministry's breach of contract claim despite explicitly cabining its analysis to the jurisdictional issue. *See* J.A. 199 (district court's opinion stating "because the Court begins and ends with the jurisdictional challenge, the Court need not address the latter argument"). That was legal error.

Although the evidentiary issues and defenses the court considered may be relevant to a Rule 12(b)(6) determination, they are irrelevant to determining the amount in controversy. As stated above, at this stage of the litigation, a district court should only consider the alleged damages amount and whether the plaintiff pleaded its allegations in good faith. *St. Paul Mercury Indem. Co.*, 303 U.S. at 289. Naffa does not argue, and the court did not find, that the Ministry fraudulently pleaded damages of $635,000 or otherwise

10

pleaded its damages in bad faith. *See Smithers*, 204 U.S. at 642 (stating that dismissal for lack of subject matter jurisdiction would be warranted if the plaintiff had fraudulently stated the value of his land and the extent of his damages). Absent such allegations, the court should have accepted the Ministry's alleged damages as the amount in controversy in this case. *See JTH Tax, Inc.*, 624 F.3d at 638.

This is so even if the court believed that the Ministry's claims would ultimately fail. *See id.* at 639–40 (reversing the district court's jurisdictional dismissal where the plaintiff's claim's value was "at least facially plausible," and this Court could not say with legal certainty that the value was less than $75,000). And it remains so even if the court disagreed with the amount the Ministry claimed it was entitled to. *See id*. at 638 (stating that disagreement over the mathematical accuracy of a plaintiff's damages calculation does not call jurisdiction into question). Here, the Ministry pleads damages of at least $635,000, an amount that substantially exceeds the statutory minimum. Because the district court did not find that the Ministry pleaded its damages in bad faith and the pleaded damages exceed $75,000, the Ministry's claims meet the amount in controversy requirement. The district court erred in holding otherwise.

The parties ask that we review all of the district court's decisions to determine whether the court's conclusions regarding potential defenses and evidentiary determinations were correct. We decline the parties' invitation at this juncture. We therefore vacate all of the district court's remaining decisions as premature without opining on the merits of the court's conclusions and remand to the district court to address the merits.

11

IV.

The district court erroneously concluded that the Ministry's claims did not meet the statutory amount in controversy and dismissed the case for lack of subject matter jurisdiction.  Because we conclude that the Ministry sufficiently pleaded an amount in controversy above the statutory minimum, we reverse the court's jurisdictional determination, vacate all other determinations it made, and remand for further proceedings.

*REVERSED, VACATED, AND REMANDED*